STATE, Respondent v. OPPERMAN, Petitioner

(228 N.W.2d 152)

(File No. 11440. Opinion filed April 15, 1975)

Earl Mettler and Tom Lehnert, Asst. Attys. Gen., Pierre, for respondent; Kermit A. Sande, Atty. Gen., Pierre, Arthur L. Rusch, State's Atty., Vermillion, on the brief.

Robert C. Ulrich, Vermillion, for petitioner.

WINANS, Justice.

Defendant-appellant was convicted of possession of less than one ounce of marijuana in violation of SDCL (1967) 39-17-95. He contends, as he did in the court below, that it was error for the trial judge to allow the product of the search and all fruits flowing from it to be introduced into evidence because the search was in violation of the Fourth Amendment to the United States Constitution.

The facts surrounding this search are as follows: During the early morning hours of December 10, 1973, Vermillion police officer, William Herrick, issued a parking ticket to appellant's automobile pursuant to a Vermillion ordinance which prohibits parking in the downtown area from 2:00 A.M. to 6:00 A.M. At approximately 10:00 A.M. on the morning of December 10th a metermaid for the City of Vermillion issued another ticket to appellant's vehicle for an expired parking meter violation. She returned to the station and informed Police Officer Frank that the vehicle had been issued a second ticket.

Officer Frank went to the car and inspected the tickets. He then called for the assistance of a tow truck operator who towed the vehicle to the city impound lot. At this time the vehicle was locked and all windows were closed. The police officer ordered.

the tow truck operator to break into the vehicle, which he succeeded in doing by unlocking the door with a tool. Frank then seized a number of articles, among which was a watch on the dashboard. These articles were in plain view and are not in issue for the purposes of this appeal.

After securing all articles of value within the area of his vision, the officer continued his exploration of the vehicle by entering the closed console where he found and seized a plastic bag containing a leafy substance which was later determined to be marijuana.

Prior to this seizure Frank had no probable cause to believe that the automobile contained contraband, nor was appellant under arrest. His car was towed for violating a mere parking ordinance and was searched pursuant to a Vermillion Police Department procedure.

I

As a threshold question we must decide if a detailed inventory of a private vehicle is a search which falls within the Fourth Amendment prohibition against unreasonable searches and seizures.

The Supreme Court of the United States has not decided whether an inventory procedure is a search. In Cady v. Dombrowski, 1973, 413 U.S. 433, 442, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706, 715 (Fn.), Justice Rehnquist, noting the state's argument that an inventory is not a search because it is not conducted to uncover evidence of a crime, said, "We need not decide this issue". This court, however, must. Logic and well-reasoned decisions from other jurisdictions lead us to conclude that an intrusion into a citizen's vehicle, as in the instant case, is a search.

The California Supreme Court, in a factual situation close to the instant case, decided that an inventory procedure conducted pursuant to a police regulation is a search cognizable under the Fourth Amendment. See Mozzetti v. Superior Court of Sacramento County, 1971, 4 Cal.3d 699, 94 Cal. Rptr. 412, 484 P.2d 84.

In that case defendant was removed to a hospital after sustaining injuries in a two-car collision. Her vehicle was blocking the roadway and arrangements were made to have it towed to a storage facility pursuant to a California statute. Prior to towing, in accordance with standard police department procedure, an officer of the Sacramento Police Department prepared an inventory of the contents of defendant's automobile. He opened an unlocked suitcase in the rear seat of the vehicle, apparently to determine if it contained anything of value. A plastic bag containing marijuana was found. Defendant's motion to suppress the evidence was rejected by the trial court. But on appeal the Supreme Court held that error was committed when the evidence found in the closed suitcase was not suppressed.

The prosecution in *Mozzetti,* as in the instant case, sought to validate the inventory of defendant's vehicle by distinguishing between an inventory and a search. The state contended that an inventory is conducted not to uncover evidence of criminal activity, but to prevent the theft of articles left in the car. Thus it was argued the procedure is not a Fourth Amendment search.

Rejecting this theory the Supreme Court of California said, and we concur, that:

> "It seems undeniable that a routine police inventory of the contents of an automobile involves a substantial invasion into the privacy of the vehicle owner. *Regardless of professed benevolent purposes and euphemistic explication, an inventory search involves a thorough exploration by the police into the private property of an individual.* In that process suitcases, briefcases, sealed packages, purses—anything left open or closed within the vehicle—is subjected without limitation to the prying eyes of authorities. Merely because the police are not searching with the express purpose of finding evidence of crime, they are not exempt from the requirements of reasonableness set down in the Fourth Amendment. Constitutional rights may not be evaded through the route of finely honed but nonsubstantive distinctions." (emphasis supplied), 94 Cal.Rptr. at 416, 484 P.2d at 88.

■ The Fourth Amendment's prohibition against unreason-able search and seizure serves as a protective border between necessary investigations by governmental agents and the constitutional grant of privacy to our citizens. Rejecting a restricted interpretation of this amendment the Supreme Court stated:

"The basic purpose of this Amendment, as recognized in countless decisions of this Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." Camara v. Municipal Court, 1967, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930, 935.

■ Contrary to this expression of the purpose of the Fourth Amendment by the United States Supreme Court, the State contends that if this Court approves inventory searches, we will not thereby give police an unbridled power to search for evidence without justification because a valid inventory does not have as its motive a desire to find evidence. We cannot accept this contention. As previously noted, the Fourth Amendment protects our citizens' right to privacy and it is mere semantics to say that a detailed search of one's car is not a substantial invasion of privacy, even if it is made for the professedly benevolent purpose of theft prevention. This Court does not subscribe to a limited and semantical reading of the concept of "search" as used in the Fourth Amendment. Rather, we believe that that Amendment:

" * * * governs all intrusions by agents of the public upon personal security, and * * * [makes] the scope of the particular intrusion, in light of all the exigencies of the case, a central element in the analysis of reasonableness. * * This seems preferable to an approach which attributes too much significance to an overly technical definition of 'search,' ". (citations omitted) Terry v. Ohio, 1968, 392 U.S. 1, 18 Fn. 15, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889, 904.

The Eighth Circuit Court of Appeals has also refused to attribute too much significance to an overly technical definition of "search". In United States v. Lawson, 8 Cir., 1973, 487 F.2d 468, 472, the Court said it would not be bound by a

" * * * highly technical construction of the meaning of 'search,' unwarranted in our view of the Fourth Amendment. To consider an inventory procedure not to be a 'search' does violence to the concept of the Fourth Amendment as a protection of the privacy of the citizenry against unwarranted invasion by government officials."

In *Lawson* the Court upheld the lower court's holding granting defendant's motion to suppress evidence in the form of a revolver seized from the trunk of his impounded car by local police officers in Aberdeen, South Dakota. The Court held that because the only justification for the search of the automobile was its mere possession by the police, the gun found in the locked trunk was improperly seized and was inadmissible as evidence.

It should be noted that in *Lawson* the defendant was in police custody, on a charge of passing insufficient funds checks when his car was impounded and searched. The warrantless search there could conceivably have been justified as being incident to a lawful arrest. See Chimel v. California, 1969, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. No such justification is present in the instant case where the only violation by defendant was that of a parking ordinance.

Were this Court to hold that an inventory is not a "search" within the meaning of the Fourth Amendment we would be placing government agents in a better position when they have no reason to search, because then a general exploratory "inventory" will be upheld; but if required to secure a warrant, they would have to describe with particularity the place to be searched and the articles to be seized. In *Camara,* supra, the Supreme Court gave expression to the inconsistency which would result from removing inventory searches from the larger category of "searches" which fall within the purview of the Fourth Amendment.

"It is surely anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior." 387 U.S. at 530, 87 S.Ct. at 1732, 18 L.Ed.2d at 936.

■ Because a holding by us that inventories are not searches would lead to the encouragement of fishing expeditions and a whittling away of Fourth Amendment protection we decline to so hold. Mindful that "The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears", Coolidge v. New Hampshire, 1971, 403 U.S. 443, 462, 91 S.Ct. 2022, 2035, 29 L.Ed.2d 564, 580, and adopting the principles expressed in *Terry, Camara, Mozzetti* and *Lawson,* we hold that the inventory procedure used by the Vermillion police is a search involving a substantial invasion of privacy which must conform to the reasonableness requirement of the Fourth Amendment.

## II

Because the police procedure in the present case is a search it must comply with the Fourth Amendment, which provides that:

> "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no Warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Only *unreasonable* searches are condemned by this Amendment. This Court must, therefore, determine whether the instant search was unreasonable, and if so found, the evidence in question must be suppressed.

At the outset we observe that beside a few well drawn exceptions, searches of private property without consent are unreasonable when government agents are not acting pursuant to a valid search warrant. See, e. g., Stoner v. State of California, 1964, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856, and Katz v. United States, 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. As the Court explained in Johnson v. United States, 1948, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436:

> "The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a

society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent."

The automobile, however, occupies a somewhat different position than does immovable property in the constitutional scheme of things.

"[A]utomobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize." Chambers v. Maroney, 1970, 399 U.S. 42, 48, 90 S.Ct. 1975, 1979, 26 L.Ed.2d 419, 426.

This distinction arises from both the highly mobile character of the automobile and the fact that, "extensive, and often noncriminal contact with automobiles will bring local officers in 'plain view' of evidence, fruits, or instrumentalities of a crime, or contraband." Cady v. Dombrowski, 1973, 413 U.S. 433, 442, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706, 715. Despite this distinction it must, of course, still be shown that the search was reasonable. See Preston v. United States, 1964, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, and State v. McCreary, 1966, 82 S.D. 111, 142 N.W.2d 240.

It is difficult to draw a single, consistent thread through decisions which have passed on the reasonableness of vehicle searches. Justice Rehnquist acknowledged this in his oft-quoted dictum that:

"[T]he decisions of this Court dealing with the constitutionality of warrantless searches, especially when those searches are of vehicles, suggest that this branch of the law is something less than a seamless web." Cady, supra, 413 U.S. at 439, 93 S.Ct. at 2527, 37 L.Ed.2d at 714.

Both petitioner and respondent have directed us to a trilogy of United States Supreme Court decisions which offer guidance in deciding whether the search in the instant case was reasonable.

In Cooper v. California, 1967, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730, defendant was arrested for a narcotics violation and his vehicle was impounded pursuant to a California statute which authorized the seizure of any vehicle used to unlawfully transport narcotics. The Court stated that "whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case". 386 U.S. at 59, 87 S.Ct. at 790, 17 L.Ed.2d at 732. Looking to the facts of that case the Court in a 5-4 decision held the warrantless search to be reasonable because there was an intimate nexus between the reason for the arrest and the impoundment and subsequent search of the automobile. As pointed out by the Court:

> "[T]he officers seized petitioner's car because they were required to do so by state law. They seized it because of the crime for which they arrested petitioner. They seized it to impound it and they had to keep it until forfeiture proceedings were concluded. Their subsequent search of the car—whether the State had 'legal title' to it or not— was closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained." 386 U.S. at 61, 87 S.Ct. at 791, 17 L.Ed.2d at 732.

Cooper is clearly inapposite to the instant case because the vehicle here was not impounded for a forfeiture action. Nor was the reason for its impoundment (a parking violation) in any way related to the petitioner's subsequent arrest.

In arguing for the reasonableness of the instant search, the State places great weight on Cady v. Dombrowski, supra, where the Supreme Court held that the warrantless search of an automobile, which the officers reasonably believed to contain a gun, but which disclosed several bloody articles, was not an unreasonable search. Reliance on Cady ignores the factual considerations present there, but absent in the instant case. First, the automobile in Cady constituted a nuisance on the highway

because it was inoperative due to the accident. The driver was unable to have the car towed because he was intoxicated and later comatose. Second, the police conducted the search for the revolver to prevent its falling into the wrong hands. The accident victim was a Chicago policeman, who the police of Kewaskum, Wisconsin, believed was required by regulation to be armed at all times. When the revolver was not found on his person they had good cause to suspect it was in the vehicle. Therefore, this search, motivated by "concern for the safety of the general public", was held to be constitutionally reasonable.

As stated, vast factual distinctions separate the case at bar from *Cady*. Here the automobile was not located where it was a public nuisance. It was instead parked in a designated parking space. The record offers no reasons why petitioner could not arrange for the safekeeping of his vehicle at the time or after it was towed from where it had been parked. And most important-ly, there was no reason for the Vermillion police to believe that the car contained anything which posed a potential threat to the public safety.

The final, and perhaps for our purposes most relevant, Supreme Court ruling on inventory searches is Harris v. United States, 1968, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067. In *Harris* the defendant's automobile had been seen leaving the site of a robbery. The car was traced and the defendant was arrested as he was entering his automobile. The police decided to impound the defendant's automobile. At this time the windows of the car were open- and the door was unlocked. After the automobile had been towed to the impound area, and pursuant to a police regulation, an inventory of the articles in the vehicle was taken. The police officer placed a property tag on the steering wheel, rolled up the windows and locked all the doors. While the officer was rolling up the windows and locking the doors, he discovered a registration card, which lay face up on the metal stripping over which the door closed. The Court held that the registration card was not seized in violation of the Fourth Amendment because the registration card was in "plain view."

"Once the door had lawfully been opened, the registration card, with the name of the robbery victim

on it, was plainly visible. It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced into evidence." 390 U.S. at 236, 88 S.Ct. at 993, 19 L.Ed.2d at 1069.

The holding in *Harris* is predicated on, and limited to, the "plain view" exception to the warrant requirement. The record of the instant case clearly reflects that the contraband seized was not the product of a plain view discovery.

Because the considerations which were pivotal in *Cooper, Harris* and *Cady* are lacking in the case at bar we must "depend upon an analysis of the 'reasonableness' of the search here in question." *Lawson,* supra, 487 F.2d at 471.

Under a standard of reasonableness warrantless searches of vehicles are to be approved only in a few carefully defined instances, among which are: Where there exists both probable cause and mobility at the time of the search, Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; when a search is conducted under a reasonable belief that the vehicle contains an object which might endanger the general public, Cady v. Dombrowski, supra; when a search is incident to a lawful arrest, Chimel v. California, supra; and when an automobile is lawfully held as evidence of a crime preparatory to the institution of forfeiture proceedings as in Cooper v. California, supra.

There are no circumstances present in the instant case to justify the warrantless search of the contents of the closed console. The search was not incident to a lawful arrest; not based on probable cause to believe the vehicle contained contraband; not justified by the nature of the police custody involved; nor were exigent circumstances present.

Addressing the contention that police have a right to conduct inventory searches to protect themselves from groundless claims the Court in United States v. Lawson, supra, said:

"For the police practice considered here to be found reasonable under the Fourth Amendment, absent a warrant or falling within a recognized exception to the

warrant requirement, there must be a *minimal inter-ference* with the individual's protected rights. A police duty to safeguard the owner's property does not auto-matically give the police the right to search." (emphasis supplied) 487 F.2d at 475.

And to the same effect the United States Supreme Court has stated that:

" '[L]awful custody of an automobile does not of itself dispense with constitutional requirements of searches thereafter made of it', * . * * the reason for and the nature of the custody may constitutionally justify the search." Cooper v. California, supra, 386 U.S. at 61, 87 S.Ct. at 791, 17 L.Ed.2d at 733.

▆▆▆ Cognizant that mere custody of a vehicle is not sufficient to cause a divestiture of Fourth Amendment protections we hold that "minimal interference" with a citizen's constitutional rights means that police inventory searches must be restricted to safeguarding those articles which are within plain view of the officer's vision. This limitation upon the scope of an inventory search of a vehicle has found implicit approval by this Court in State v. Catlette, 88 S.D. 406, 1974, 221 N.W.2d 25, where Jus-tice Doyle speaking for the Court interpreted the case of United States v. Lawson, supra, as limiting a reasonable search to "re-moval of objects within plain sight". The opinion states that an inventory search limited to removing objects in plain view, if done without an investigative motive, is a reasonable search.* We now explicitly approve this rule.

---

* "The court's discussion in United States v. Lawson, supra, implies to us that in that case reasonableness ended with the removal of objects within plain sight—objects which when spotted by a passing vandal would pro-vide the temptation for exploration into the vehicle and damage to its con-tents. Just as the situation in Cady v. Dombrowski, supra, demanded the locating of the revolver to protect the public, the facts in Lawson did not justify a search of the trunk merely to protect the police from potential liability.

In the instant case, we find that the scope of the intrusion here, if done for noninvestigative reasons, was reasonably related to the permis-sible purpose of preventing police liability. The record reveals that the hatchet and tire iron could possibly have been seen from outside the car. They were in a position so that the police in trying to remove possible temptation from vandals would have found the hatchet and tire iron in 'plain view'. See Cady v. Dombrowski * * *, and Harris v. United States,". (citations omitted) 221 N.W.2d 25 at 29.

Applying this standard to the instant case would mean that the officer had a right to enter the vehicle to remove those objects in plain view, such as the watch on the dashboard, to a place of safety. He had no right to conduct an exploratory search of either the console, the trunk or a closed suitcase. Of course, while lawfully retrieving articles from inside the vehicle the officer need not blind himself to what is within his field of vision because as already noted:

> "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." Harris v. United States, supra, 390 U.S. at 236, 88 S.Ct. at 993, 19 L.Ed.2d at 1069.

When in possession of an impounded car the police are acting as gratuitous depositors. SDCL 43-39-11 provides that "[a] gratuitous depository must use at least slight care for the preservation of the thing deposited." Certainly removal of those objects within plain view and closing of windows and locking of doors satisfies the minimal standard of "at least slight care", thus protecting the police from civil tort claims. This view is shared by the California Supreme Court which said "In no case is an inventory of items not within plain sight essential to safeguard the contents or to fulfill a 'slight' duty of care." Mozzetti, supra, 484 P.2d at 90, 94 Cal.Rptr. at 418.

██ Because the only justifying circumstance presented to this Court in support of the warrantless search of the closed console was naked custody of the vehicle we must conclude that the instant search was unreasonable.

The judgment appealed from is reversed.

DUNN, C. J., and DOYLE and COLER, JJ., concur.

WOLLMAN, J., dissents.

WOLLMAN, Justice (dissenting).

Because the intrusion by the police into defendant's automobile, even if it is characterized as a search, was clearly reasonable

under the rationale of Cady v. Dombrowski, 1973, 413 U.S. 433, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706, I would hold that the trial court did not err in denying defendant's motion to suppress the evidence.

Defendant's automobile was first ticketed at 3 a. m., when an officer observed it parked on a street a short distance from a sign that informed the public that parking was prohibited from 2 a. m. to 6 a. m. Apparently the vehicle remained in place until approximately 10 a. m. the same day, when another police officer issued a ticket for overtime parking. In accordance with standard police procedures, the vehicle was then towed to the impoundment lot, where, again according to established routine procedures, an officer made an inspection of the exterior condition of the automobile and an inventory of the contents of the interior of the automobile. The glove compartment was unlocked. There was no entry by the police into the locked trunk compartment.

The officer who conducted the inspection and inventory testified that all vehicles taken to the impoundment lot are inventoried against a standard inventory sheet. This is done because in past instances property has been stolen from locked cars in the impoundment lot. The officer testified that he had never seen defendant's vehicle before, that he did not know defendant, and that he had no reason to suspect that the automobile might contain drugs.

There is nothing in the record to indicate that the police acted illegally, unreasonably or improperly in towing defendant's automobile from where it was illegally parked to the impoundment lot. The officers apparently treated defendant's automobile as they would have treated any other automobile found in the same circumstances. The record reveals that the Vermillion police department tows away vehicles for violation of ordinances designating restricted parking zones. The fair inference from the testimony of the officers is that vehicles thus illegally parked in the downtown area of Vermillion are considered to present more of a problem to city officials than those that are parked merely in violation of parking meter restrictions. The following language from Cady v. Dombrowski, supra, is applicable here:

" * * * The Thunderbird was not parked adjacent to the dwelling place of the owner as in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), nor simply momentarily unoccupied on a street. Rather, like an obviously abandoned vehicle, it represented a nuisance, and there is no suggestion in the record that the officers' action in exercising control over it by having it towed away was unwarranted either in terms of state law or sound police procedure."

The case of United States v. Lawson, 8 Cir., 487 F.2d 468, is distinguishable. In that case, defendant was present at the time his vehicle was seized by the police. There was nothing in the record to indicate that it was necessary for the police to impound the vehicle. (The Government expressly disavowed any contention that the search was incidental to a lawful arrest. 487 F.2d at 469). Entry was made into the locked trunk compartment of the vehicle.

I would not restrict the police to an inventory of only those items that are in plain view within the interior of an automobile. Whether an inspection of the interior of a locked glove compartment would be reasonable or unreasonable would depend upon the circumstances under which such entry was made. Cady v. Dombrowski, supra. What was said in United States v. Gravitt, 5 Cir., 484 F.2d 375, is applicable here:

" * * * But we are confident that here, as in other contexts, reviewing courts will be fully capable of assuring that the scope of the intrusions involved will be tailored to the specific public interests which lie at the root of the finding that the intrusions are reasonable." (Citations omitted) 484 F.2d at 380.

I would affirm the judgment.