**KOUPAL & ANTON, INC.,**

v.

**Glen WIECZOREK.**

No. 14458.

Supreme Court of South Dakota.

Considered on Briefs June 6, 1984.

Decided Oct. 16, 1985.

Dennis R. Padrnos, James D. Taylor, Tinan, Padrnos, Smith & Taylor, Mitchell, for plaintiff and appellee.

Ellsworth E. Evans, Monte R. Walz, Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellant.

FOSHEIM, Chief Justice, (on reassignment).

Appellant-Glen Wieczorek (Principal) appeals from a verdict in favor of Appellee-Koupal & Anton, Inc., (Broker) for a real estate sales commission. We affirm.

On July 6, 1979, Broker executed a listing contract with Principal for the sale of farm land. The agreement contained these terms:

Contract for Deed, 29% down at closing for 15 yrs. or negotiable for 20 yrs. except NE ¼ of Section 21 Township 102 Range 62, except highway Davison County, Mount Vernon, S.Dak. negotiable.

It further provided that Broker was to receive a 5% commission if, *inter alia*, a sale was made; a ready, willing and able purchaser was found before the expiration date; or Principal revoked or violated the agreement.

Broker contends the listing agreement was subsequently orally modified in accordance with Principal's wishes to reflect new financing terms. These alleged modifications were noted by Broker on his copy of the agreement. Principal, however, did not assent in writing to any alterations.

Broker located a buyer who signed a purchase agreement. Principal refused to sign the purchase agreement and to pay Broker their commission for locating a ready, willing, and able buyer.

Broker commenced this action to recover the sale commission on two theories: (1) Principal wrongfully revoked the listing contract, and, (2) Principal breached the contract by refusing to pay for the services rendered by Broker in obtaining a buyer. The jury returned a verdict for Broker. Principal's motion for a judgment notwithstanding the verdict was denied.

Principal claims the trial court erred in refusing to direct a verdict in his favor because he did not revoke the listing agreement as a matter of law. A verdict is properly directed against the plaintiff when there are no questions for the trier of fact and all reasonable minds would agree that there has been an essential failure of proof to establish a prima facie case against the defendant. *Thorstenson v. Mobridge Iron Works Co.*, 87 S.D. 358, 208 N.W.2d 715 (1973). We review the evidence in a light most favorable to the non-moving party and give that party the benefit of all reasonable inferences. *Cox v. Brookings International Life Insurance Co.*, 331 N.W.2d 299 (S.D.1983).

To avoid a directed verdict on the revocation issue, Broker must establish a valid fact question showing that Principal revoked the listing agreement. The record supports the trial court's conclusion that such an issue was established. Evidence was presented that Principal told Broker after the purchase offer was presented that the land was priceless; his sons were coming back to farm; and that he would not sell the farm for even $2,000.00 per acre. In other words, he simply changed his mind about selling. From this evidence, which was not directly disputed, the jury could, and apparently did, conclude that Principal revoked the listing agreement which entitled Broker to recover his

commission. That conclusion would render the alleged oral modifications concerning financing terms irrelevant.

■ Each remaining error claimed by Principal is tied to Broker's theory that Principal breached the listing agreement. Under this theory, Broker alleges that Principal's initial refusal to complete the sale with the procured buyer was a breach of the listing contract. *See, e.g., Larson v. Syverson,* 84 S.D. 31, 166 N.W.2d 424 (1969). A refusal to complete a proposed sale is not the same as a revocation of the listing agreement. It is a different theory of recovery grounded on sellers breach of a fully consummated unilateral contract to pay for services rendered by the broker under the listing agreement. *See id.* at 35–36, 166 N.W.2d at 426.

In *Meyer v. Johnson,* 254 N.W.2d 107 (S.D.1977), we held:

> In determining whether error was probably harmless or probably prejudicial an appellate court is guided by all the factors in the case bearing on the likelihood of prejudice, the force of the evidence to sustain the verdict the assumptions that the jury was intelligent, and where the verdict is sustainable on more than one theory, that the verdict is based on the theory unaffected by error where nothing in the case suggested the contrary.

*Id.* at 112 (quoting *Allen v. McLain,* 75 S.D. 520, 69 N.W.2d 390 (1955)). *See also Plucker v. Kappler,* 311 N.W.2d 924 (S.D. 1981). If at least one proper issue was submitted to the jury, and a general verdict for the plaintiff is returned, the reviewing court will assume that the verdict was returned upon the issue properly submitted. *Aschoff v. Mobil Oil Corp.,* 261 N.W.2d 120, 124 (S.D.1977). *See also Mid-America Marketing Corp. v. Dakota Industries, Inc.,* 289 N.W.2d 797 (S.D.1980) and *Eberle v. Siouxland Packing Co., Inc.,* 266 N.W.2d 256, 259 (S.D.1978). To be prejudicial, errors must produce some effect upon the final result and affect rights of the party assigning it. *K & E Land and Cattle, Inc. v. Mayer,* 330 N.W.2d 529, 533 (S.D.1983).

■ Upon review of the evidence, we conclude that the verdict is fully sustainable on Broker's revocation theory. Nothing in the record indicates the jury would have reached a contrary verdict absent the claimed errors regarding the alleged breach. Assuming Principal's remaining arguments have merit, they nevertheless do not rise above harmless errors.

The judgment is affirmed.

MILLER and MARTIN, Circuit Judges, concur.

HENDERSON, J., and DUNN, Retired Justice, dissent.

MARTIN, Circuit Judge, sitting for MORGAN, J., disqualified.

MILLER, Circuit Judge, sitting by appointment.

DUNN, Retired Justice (dissenting).

I would reverse the jury verdict.

The trial court erred in admitting oral statements modifying the listing agreement. Under South Dakota law, "a contract in writing may be altered by a contract in writing ... or by an executed oral agreement, and not otherwise." SDCL 53–8–7. The original written listing agreement was not modified in writing and no offer to purchase was made under the original written listing. Further, this could not be an executed oral contract under the disputed oral revision of the listing agreement because the broker utterly failed to produce a purchaser ready, willing, and able to buy even under the purported revision.

The evidence indicates that the proposed buyer was without assets to make the purchase and had no commitment for credit that could by any stretch of the imagination make him *able* to buy the property under any terms. In fact, the offer was so nebulous and frivolous that it brought on the angry statement from the seller under which the majority would not maintain that the listing contract was repudiated. The

seller never received an offer under the legal listing that he signed, so how could he repudiate it.

Under South Dakota law, the jury should not have been allowed to speculate as to the effect of a disputed telephone call modifying the written listing agreement, and this defendant should not be forced to pay a $96,000 commission to a broker for producing a buyer with phantom credit and no cash. The unconscionable result reached by this jury is the very reason that a growing number of states, including South Dakota, require that listing agreements be in writing and conform to the Statute of Frauds. ARSD 20:56:05:10.1.

I am authorized to state that Justice HENDERSON joins in this dissent.